[Cite as *State v. Wooten*, 2013-Ohio-1841.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0021** |
| FLOYD WOOTEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 297.

Judgment: Affirmed in part; reversed in part and remanded.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Judith M. Kowalski*, 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal comes to us from the Ashtabula County Court of Common Pleas. Appellant, Floyd Wooten, appeals from his conviction on one count of rape in violation of R.C. 2907.02(A)(1)(c), a felony of the first degree, and one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a felony of the third degree. Appellant challenges various aspects of his trial, including the court's ruling on his

motion to suppress, the trial court's failure to consider his offenses to be allied offenses of similar import, and the sufficiency and weight of the evidence.

{¶2}  In September 2011, appellant was indicted on the above-referenced charges.  Upon arraignment, appellant pled not guilty to the charges.  A jury trial commenced in March 2010, and appellant was found guilty of the charges.  Appellant was sentenced on May 24, 2012, to a six-year prison term for the rape conviction, and a five-year prison term for the unlawful sexual conduct conviction.  The sentences were ordered to run concurrently.  The court specifically found that the two offenses were not allied offenses of similar import.

{¶3}  Based on the testimony and evidence presented at trial, the foregoing charges stem from an incident that took place on July 17, 2011, at 3416 Station Avenue, the residence of Tommie Colbert.  Appellant, who is over 60 years old, was a guest in Colbert's home, and was essentially homeless prior to moving into Colbert's home.  Colbert dispatched the police to the residence after he found appellant on top of his 15 year-old step-daughter, the victim, in her bedroom.  Colbert was prompted to enter the bedroom when he heard a noise emanating from the room. When Colbert opened the door and turned on the lights, both appellant and the victim were naked, and it appeared to Colbert that appellant was having sex with the victim.  Due to medication, Risperidone, that the victim takes at night which puts her in a deep sleep, the victim was asleep until Colbert turned on the lights and observed appellant on top of her.  He testified that he saw them "having sex" based on his observation of appellant's movements.  The victim did not have any recollection of the incident.  After being discovered by Colbert, appellant fled the room and Colbert called the police to the residence.

{¶4} Patrolman Christopher Defina arrived at the scene and found Colbert running around in the front yard frantically. Colbert told Defina that appellant was in the upstairs bedroom on top of his step-daughter, and that both were naked. Defina entered the residence and found appellant clothed and sitting in a chair. Defina handcuffed appellant, took him out of the residence, and read him his Miranda rights.

{¶5} Thereafter, on the scene, prior to transport and in response to questioning, appellant told Defina that he touched the victim's breasts, vagina, and fingered her. Appellant then told Defina, "[m]y ass is in the air on this one. Maybe I should speak to an attorney." At that point, Defina ceased questioning appellant, placed him in the patrol car, and transported him to jail. The victim was transported to the hospital by ambulance for the purpose of obtaining a rape kit.

{¶6} That evening, while appellant was in jail, Defina, after reminding appellant that he was read his Miranda rights, once again spoke with and questioned appellant. After reminding appellant of his rights, Defina asked appellant if he wanted to speak further or wished to speak with an attorney. Appellant told Defina that maybe at the beginning he wanted to speak with a lawyer, but then proceeded to speak with Defina. During this exchange, appellant informed Defina that when he first met the victim and they shook hands, sparks flew. Appellant further informed that on the night at issue he was watching a movie with the victim and that she asked him to go to her room. Ultimately, after the movie ended, appellant went to the victim's room. Appellant said the two began kissing and that he touched her breasts. In response to a question, appellant stated that he touched the victim's vagina. Moreover, regarding whether penetration occurred, the following exchange took place:

{¶7} "Q: (State's Attorney): Ok. Did you ask him whether he penetrated her?

3

{¶8} "A: (Defina): Yes, I did.

{¶9} "Q: And what did he tell you?

{¶10} "A: Ah, he said that -- he said that --he said he first got into petting with her.  He said that he did -- he fingered -- penetrated her with this finger is what he said, never his penis."

{¶11} The following morning, Captain Johnson of the Ashtabula Police Department was informed that appellant may want to speak.  Johnson brought appellant into a common area and asked if he wished to make a recorded statement, but reminded him that he did not have to speak.  Appellant responded that he did not want to make a recorded statement.

{¶12} At trial, Christine Hammett, a forensic scientist at the Ohio Bureau of Criminal Investigation ("BCI"), testified that she performed the tests on the victim's rape kit.  According to her testimony, the preliminary testing of the vaginal swabs in the test kit tested positive for semen.  However, during further testing, she was unable to identify semen in the vaginal samples.   Hammett sent various DNA samples for testing.

{¶13} Shawn Weiss, the Associate Technical Director of the Forensic Identity Department at Lab Corp., testified that he tested the samples collect by BCI for DNA.  A DNA sample was collected from appellant to be analyzed against the swabs and samples taken from the victim.  Appellant could not be excluded as the source of the male DNA from the vaginal swabs, the underwear sample, nor the abdominal swab. With respect to the aforementioned swabs, Mr. Weiss testified that the odds of another individual having a matching DNA profile are 1/238, 1/595, and 1/704, respectively. He also testified that multiple DNA profiles were found in the underwear and abdominal swabs, and explained that people living in the same house could transfer DNA

4

innocently by sitting on the same couch, using the same utensils, or laundering clothes together. However, with respect to the vaginal swab, seven out of the seventeen DNA markers, or addresses of the male Y chromosome were associated with one male profile, that of appellant. In other words, it was associated with a single source rather than multiple profiles as were found in the underwear and abdominal swabs.

{¶14} After the state rested its case, appellant moved for acquittal pursuant to Crim.R. 29. That motion was denied by the trial court. Appellant did not present evidence in his own defense. The case then went to the jury, where as noted previously, appellant was convicted on both counts.

{¶15} Appellant timely appealed his convictions and raises the following five assignments of error for our review:

{¶16} "[1.] The Trial Court erred to the prejudice of appellant by failing to suppress statements made by appellant to police officers.

{¶17} "[2.] The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶18} "[3.] The trial court erred to the prejudice of appellant by finding that rape and unlawful sexual conduct with a minor are not allied offenses of similar import, and sentencing him separately on each charge.

{¶19} "[4.] The trial court erred in denying appellant's motion for acquittal pursuant to Ohio Crim.R. 29.

{¶20} "[5.] The appellant's convictions are against the manifest weight of the evidence."

5

{¶21} Under his first assignment, appellant contends that his incriminating statements to the police should be suppressed. Appellant argues that when he said on two occasions, "maybe I should talk to my attorney," he was invoking his right to counsel and that he never expressly waived his right to counsel. He further contends that those statements should have been suppressed because no recording of any kind was made, nor written notes, nor a written statement taken from him. Specifically, appellant contends that Defina's report, made after the fact, was not based on any written notes, and Defina was the sole officer present at the alleged interview who could vouch for what was said. For the reasons that follow, we disagree with appellant.

{¶22} "At a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Jones*, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, ¶16, citing *State v. Mills*, 62 Ohio St.3d 357 (1992). "When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Guysinger*, 86 Ohio App.3d 592, 594 (1993).

{¶23} Under the Fifth Amendment, a suspect is entitled to the assistance of counsel prior to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 435 (1966). An accused must clearly invoke his right to counsel in order to raise a claim of deprivation of counsel. *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, ¶93. "'[T]he suspect must unambiguously request counsel. (* * *) [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards [v. Arizona*, 451 U.S. 477(1981)] does not

6

require that the officers stop questioning the subject.'" *Id.*, citing *Davis v. United States*, 512 U.S. 452, 459 (1994).

{¶24} In *Davis*, supra, the United States Supreme Court found that the statement "maybe I should talk to a lawyer" was not a request for counsel. *Id.* at 462. Relying on *Davis*, the Supreme Court of Ohio held that a suspect's statement, "I think I need a lawyer" was not sufficiently clear to require the termination of questioning. *State v. Henness*, 79 Ohio St.3d 53 (1997).

{¶25} In the present case, appellant failed to clearly and unambiguously request an attorney when he said "maybe I should talk to my attorney." *Davis*, *supra*; *Henness*, *supra*. Because appellant's statement failed to meet the requisite level of clarity, the officers were not required to stop questioning appellant. We further note, however, that despite being given his *Miranda* warnings at the Colbert residence, and having been reminded of the same while he was in jail, appellant nonetheless elected voluntarily to speak with Patrolman Defina, even though he was advised that he was not required to do so.

{¶26} Appellant further argues that his statements were improper due to the interviewing officer's failure to record them. However, this argument is also without merit. First, appellant has failed to direct this court to any authorities in support of his proposition. App. R. 16(A)(7). Second, R.C. 2933.81 specifically states that "[a] failure to electronically record a statement as required by this section shall not provide the basis to exclude or suppress the statement in any criminal proceeding." Furthermore, aside from the fact that Defina did not have access to the recording equipment, when appellant was provided the opportunity to give a recorded statement, he declined to do so. Finally, at no time does appellant contend that Defina's written report of his

custodial statements was inaccurate or not a true account of what appellant related to Defina.

{¶27} Accordingly, based on the foregoing, appellant's first assignment of error is without merit and is not well-taken.

{¶28} For ease of analysis and for purposes of laying a proper foundation, we will take appellant's assignments of error out of order and next address his fourth and fifth assignments.

{¶29} For purposes of this case, we are limiting our review to whether appellant was guilty of counts one and two based solely upon digitally penetrating the victim. The state did not argue at trial or before this court that Colbert's testimony that it appeared appellant was engaging in intercourse with the victim was a separate act constituting guilt on either count.

{¶30} Under his fourth assignment, appellant contends that the trial court erred to his prejudice in denying his counsel's motion for acquittal pursuant to Crim.R. 29. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal utilizing the same standard used to review a sufficiency of the evidence claim. *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). Sufficiency of the evidence is a question of law dealing with adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The Supreme Court of Ohio has clearly defined an appellate court's role in reviewing the sufficiency of evidence to support a criminal conviction. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). In *Jenks*, the Court held that:

{¶31} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

8

defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶32} The pertinent statutory elements for rape pursuant to R.C. 2907.02(A)(1)(c) are:

{¶33} "(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:

{¶34} " * * *.

{¶35} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."

{¶36} "Sexual conduct" is defined in R.C. 2907.01(A) as: "Vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶37} The elements needed to prove unlawful sexual conduct with a minor pursuant to R.C. 2907.04(A) are as follows:

{¶38} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender

9

knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

{¶39} As noted above, the state presented evidence that on July 17, 2011, the victim was awakened by her father, who found appellant on top of her. Neither she nor appellant were wearing clothing. The victim testified that she was wearing clothing when she went to bed. It appeared to Colbert that appellant was having sex with the victim. After Defina was dispatched to the scene by Colbert, who reported a rape in progress, appellant was handcuffed, taken to a patrol car, and read his Miranda rights, after which he admitted to Defina that he touched the victim's breasts and penetrated her vagina with his finger. A finger is a "part of the body," one of the items qualified under the definition of "sexual conduct" in R.C. 2907.01(A) if it is inserted in the vagina. Appellant admitted the same again while at the jail later that evening. Testing of the DNA samples from the rape kit indicated appellant could not be excluded as a source of the DNA, in particular, the DNA source on the vaginal swab, which did not contain a mixture of profiles as did the underwear and abdominal swab, but rather was from a single source.

{¶40} Viewing the foregoing evidence in a light most favorable to the state, if believed, the state was able to prove to the jury that the essential elements of rape and unlawful sexual conduct with a minor beyond a reasonable doubt. Appellant's fourth assignment of error is not well-taken and has no merit.

{¶41} Under appellant's fifth assignment of error, he contends that his convictions were against the manifest weight of the evidence. Again, we disagree.

{¶42} "A manifest weight of the evidence challenge contests the believability of the evidence presented." *State v. Wynder*, 11th Dist. No. 2001-A-0063, 2003-Ohio-

5978, ¶23, citing *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13 (Dec. 23, 1994).

{¶43} "When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict." *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶44} "Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine." *Id.*, citing *State v. Thomas*, 70 Ohio St.2d 79 (1992). "When reviewing a manifest weight of the evidence challenge, an appellate court sits as the 'thirteenth juror.'" *Id.*, quoting *Thompkins*, at 387. "The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction." *Id.* Such is not the case here. In fact, to the contrary, the evidence in this case weighs heavily in favor of appellant's convictions.

{¶45} This court reiterates and incorporates by reference the facts recited in support of its analysis under appellant's fourth assignment of error above regarding the trial court's denial of appellant's Crim.R. 29 motion for acquittal. Additionally, appellant did not present any witnesses or evidence in his own defense. Accordingly, we find that the evidence presented by the state and appellant's own admissions outweigh appellant's position that the jury lost its way when it returned a guilty verdict. Our review of the evidence and all the reasonable inferences drawn from it lead to the conclusion that appellant's convictions were supported by the weight of the evidence.

{¶46} We turn now to appellant's second and third assignments. They are significantly interrelated. Therefore, we will address them together. Under his third assignment of error, appellant maintains that the trial court erred to his prejudice by finding that the rape and unlawful sexual conduct charges were not allied offenses of similar import and sentencing him separately on the two charges. In his second assignment of error, appellant contends that his counsel was ineffective for failing to disagree with the court's assessment that the two offenses were not allied offenses of similar import, and for failing to challenge the state's cumulative presentation of forensic evidence. During sentencing, appellant's counsel stated that he did not know whether the two offenses at issue were allied offenses of similar import, and that he intended to manage that issue by requesting concurrent sentences.

{¶47} The state concedes that the offenses of rape and unlawful sexual conduct with a minor are allied offenses of similar import and that appellant's case must be remanded to the trial court where his convictions will be merged for sentencing purposes. However, given the fairly recent change in this area of the law and the resulting necessity for a case by case analysis, this court will address this subject solely with respect to the facts of the instant case. Further, given that the trial court determined that the offenses were not allied offenses of similar import, this court deems it necessary to expound upon the issue.

{¶48} "[M]erger is the process of combining multiple offenses for sentencing purposes. Allied offenses of similar import 'must be merged for purposes of sentencing, and the defendant may be convicted of only one of the offenses, even though the defendant has been properly charged with and found guilty of both.'" *State v. Kouns,*

11th Dist. No. 2011-P-0105, 2012-Ohio-5331, ¶13, quoting *State v. Chaffer*, 1st Dist. No. C-090602, 2010-Ohio-4471, syllabus; R.C. 2941.25.

**{¶49}** R.C. 2941.25(A) codifies the doctrine of merger and provides:

**{¶50}** "(A) Where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

**{¶51}** In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the lead opinion regarding this issue, stated a two-part test to determine whether offenses are allied offenses of similar import under R.C. 2941.25. While *Johnson* was a plurality opinion that was not binding, this court has adopted the new test set forth in *Johnson*. *See e.g., Kouns*, *supra*; *see also State v. Jarvi*, 11th Dist. No. 2011-A-0063, 2012-Ohio-5590, ¶12-16; *State v. Perry*, 11th Dist. No. 2011-L-125, 2012-Ohio-4888, ¶104-109.

**{¶52}** Under the new test adopted by this court, the first inquiry focuses on "whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." *Johnson* at ¶48. (Emphasis sic.) The Court in *Johnson* further explained that "[i]f the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id.*

**{¶53}** "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." (Emphasis sic.) *Id.* at ¶51.

13

{¶54} Thus, "[i]n making * * * a determination [as to whether offenses are allied offenses of similar import], it is not necessary that the commission of one offense would always result in the commission of the other, but instead, the question is whether it is possible for both offenses to be committed with the same conduct. *State v. Roy*, 12th Dist. No. CA2009-11-290, 2011-Ohio-1992, ¶10, citing *Johnson* at ¶48." *State v. Jackson*, 8th Dist. No. 92531, 2011-Ohio-6069, ¶16.

{¶55} If it is found that the offense can be committed by the same conduct, the court must then determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶50. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶50.

{¶56} Applying the foregoing analysis to this case, this court finds that the crimes of rape and unlawful sexual conduct with a minor are allied offenses of similar import. That is, if an offender has committed rape, his or her conduct also plainly constitutes unlawful sexual conduct with a minor since the underlying criminal conduct in both offenses is the same, i.e., "engag[ing] in sexual conduct with another, who is not the spouse of the offender." The fact that the victim was 15 years old at the time of the offense merely rendered appellant's conduct eligible for the unlawful sexual conduct with a minor charge as well as rape. Thus, it is possible for rape and unlawful sexual conduct with a minor to be committed with the same conduct.

{¶57} The next question before us is whether appellant committed the offenses by way of a single act and with a single state of mind. *See Johnson* at ¶49. This court answers that question in the affirmative.

14

{¶58} Referring to our previous recitation of the facts, appellant's conduct on July 17, 2011, in the victim's bedroom at the Colbert residence gave rise to both convictions. Both offenses arose from appellant's conduct of digitally penetrating the victim's vagina in one single instance and in a single time period. Therefore, under the facts and circumstances of this case, and in applying the *Johnson* factors, now adopted by this court, we find these offenses to be allied offenses of similar import.

{¶59} Accordingly, appellant's third assignment of error is well-taken, and appellant's case will be remanded to the trial court for merger of the two convictions for sentencing purposes.

{¶60} Based on our disposition of appellant's third assignment of error, his second assignment of error is moot with respect to this issue and need not be addressed at this time. However, to the extent that appellant claims defense counsel failed to challenge the state's cumulative presentation of forensic evidence, we will address that issue.

{¶61} The state called three separate witnesses to testify about the efforts that were taken to find Defendant's DNA on the victim: trauma nurse Kathleen Hackett, who prepared the rape kit, Christine Hammett of BCI, and Shawn Weiss of Lab Corp. Appellant contends that the state's summoning of three witnesses overstated the importance of such evidence to the jury. Further, he contends that pursuant to the testimony, there were other explanations for the presence of appellant's DNA on the victim's person. In sum, appellant argues that if his counsel had objected to the introduction of this evidence, it would have made a difference in the outcome of his case. *See Strickland v. Washington*, 466 U.S. 668 (1984) (in a claim of ineffective

assistance of counsel, the defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced the defense.)

{¶62} First, appellant does not state how the failure to object to the introduction of the forensic evidence prejudiced his case. In addition to the forensic evidence, the jury heard the testimony of the victim, Colbert, and the admissions of appellant himself. Also, appellant does not contend that the evidence was not relevant or improper. Further, appellant declined to present a case in his defense that may have rebutted the state's forensic evidence. Thus, we fail to see how counsel's failure to object to the forensic evidence prejudiced appellant in any way pursuant to *Strickland*.

{¶63} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed in part; and this case is remanded for further proceedings consistent with the opinion.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.